which is being submitted on the briefs and will therefore not be argued. Our first case is Gerald Baker v. OPM, 2018-23-24, Ms. Wu. Good morning, Your Honors, and may it please the Court, Jennifer Wu for Mr. Gerald Baker. This case involves Mr. Baker's involuntary placement in the Federal Employees Retirement System rather than the Civil Service Retirement System for a period of 20 years starting in July of 1988. Mr. Baker's placement in the FERS system is meaningful to him because as a result of the way that retirement benefits are calculated differently between FERS and CSRS. Well, one cannot doubt that if he'd made a different election, he in the long run finally might have gotten more of a payout. But he made an election, and he signed a form that had two possibilities. I elect first coverage, I elect not first coverage, and he elected first coverage. Your Honor, I think the question in this case is whether his signature in that form is a valid election. He testified at the hearing that he was mandated to choose that form, choose box A in the form, which is at APPX 126, and he did not look at box B. The OPM attorney at the hearing also enlisted testimony from Mr. Baker at the hearing that he signed that form under duress. And I think the question— What's the duress? The duress was that he was told that he must sign box—he must check box A. He was not given any other information. That's bad advice. That was possibly bad advice. I think he believes his decision was not freely made, and the A.J. in this decision did not—felt that he had no choice but to affirm OPM's decision in this case. Do you think that all misinformation regarding the relative value of the options, for example, would constitute duress? No, Your Honor. I think there are instances in which misinformation does not constitute duress. Well, suppose that he were told, you can check the CSRS box if you want, but you will get no pension if you check that box. I mean, that's essentially what—that's not much different from what happened here, is it? I think that he was told that he must check it, and so he did. I'm not sure that he even knew he had another option. I guess in the context of what was going on at the time, FERS was the only system that was available at the time for new employees. My belief is that, although there's no testimony from the government in this respect below, is that the government employee or the agency personnel believed that he was a new employee and thus could only select FERS and not CSRS. FERS was available for new employees who could—new employees could not choose CSRS, but old employees could choose either. Or re-employed employees, as he was. Right, and for many people, FERS was the choice that they made with eyes open because it had certain advantages over CSRS. Correct. Right, okay, but you think that the difference between this case and a hypothetical in which he was told that he was given misinformation about the relative value of the two options, that would not be duress in your view? I think that it would depend on whether he felt like he was being told he had to do it. I think that if you're given options, then you do have a free choice. There was a free election in the sense that you had the option of A or B, and it was up to you to pick. And if you were rolling the dice, as it were, and didn't know which one to pick and chose A incorrectly, that's on you. I think in this case, what Mr. Baker testified to at the hearing was that he wasn't given the choice of B. He never even looked at B. He didn't know he had the option of B. And he simply was told, you must check box A. And I think in those circumstances, there's a difference. And I think that estoppel as a doctrine necessarily is equitable. And what the A.J. felt constrained to say was that all misinformation necessarily does not lead to estoppel against the government, even in cases where there's no monetary payment. And we believe that if there was a remand and the A.J. was instructed that the proper law is that there may be instances in which an election may be invalid because of a lack of free choice, the A.J. could then make factual findings as to whether or not Mr. Baker had free choice when he was signing the form that he signed in 1988. What is it that you think is needed to transform misinformation into duress? I think that that depends on whether or not there was a free choice. I think the line between misinformation and duress can be fuzzy and dependent on the facts of each case. Well, I guess I'm imagining the conversation, right? He's there. The employee says, you must sign the first box. Does he say, I thought I had the option? The employee says, you're a new employee. He says, no, no, I'm not a new employee. At which point the employee, the officer says, oh, I was mistaken. In this case, he actually asked. I mean, I think you indicated you thought that the officer of HUD misunderstood his status, thought that he was a new employee as opposed to a returning one. Right. And we surmise that she must have believed that he was a new employee. And for that reason, he asked for retirement. I guess when I hear the term duress, I think of something not curable by a couple of sentences exchanged in which somebody realizes, oh, I was mistaken. We are not arguing that duress is the only circumstance in which Mr. Baker could prevail. We think that if his choice was not freely made, even if it did not rise to the level of duress, that an involuntary election of FERS would mean that there was no election as the term implies. But what do you mean about that's where it starts to get pretty mushy, it seems to me. What do you mean by involuntary? Because there is a pretty good argument, it would seem to me, setting the case law here aside, that somebody who is given completely incorrect information, such as my previous example, would be arguing that that was involuntary. I was told something that's completely wrong. I think that's relying on misinformation to your detriment, which doesn't mean that you didn't have free choice. You may be given information that's correct and incorrect, but you relied on the incorrect information. That was your choice. Here, I think he was told you must find this, and I think that makes it different. That was your category that you identified as duress. I'm suggesting that there's another category that might not be quite as much of a compulsion as duress. Right, that there might be a lack of informed consent, something like that. Lack of informed consent, but that sounds like it's getting into if there's a mistake in the characterization of the benefits or the characterization of the choice by the government, then relief is available. We're not arguing that informed consent is required for the election at first. That's not provided for in the statute here, although it is in other cases for annuities and other types of retirement claims. What we're arguing is that the AJ was entitled to look at the equities and figure out whether or not the decision was freely made and that his decision in this case is not controlled by Springer and by Richmond as a matter of law. I think the way that the AJ wrote his decision, it was clear that he felt that as a matter of law, he was required to reject Mr. Baker's claim based on the law and not based on the equities and not looking at the facts of this particular case. What would be the consequences to the system if the agency took a more generous, looser approach? The word floodgates comes to mind. Your Honor, respectfully, we believe that the board and the Ministry of Judges are able to make these kinds of factual decisions on their own. In all the cases that have been cited by the parties, which have gone either way, in Archer, for example, they granted the claim by the employee. In other cases, they've rejected the employee's claim. But these kinds of hard questions, these factual questions as to whether there was a free choice, those are made on an everyday basis by the Administrative Judge and I don't think would open the floodgates. It may very well be the case that in this case, if there were a remand, the Administrative Judge would say, I don't find that what happened here rises to the level of not a free choice. But I think that the Administrative Judge didn't feel able to make that decision because he felt that Richmond and Springer precluded, as a matter of law, all of these kinds of claims that are based on a lack of free choice and that those cases were controlling. I wanted to ask you about the Archer case and the statute that Archer was based on, which is, I take it, the FERCCA? Right. This case is not an FERCCA case, right? Right, that's right. I take it that that is the statute that was intended to correct certain kinds of errors that were made with respect to people that were arguably eligible for one or the other of the two systems, but not this kind of error. That's correct. Am I right? You're right about that. The statute of the RCC was intended to correct misplacement in a retirement system to which you are not entitled. In this case, Mr. Baker is entitled to be in CSRS or FERS based on his previous service, and therefore that correction provision is not available to him. Based on the cases cited in the party's briefs, there appears to only have been three cases before this court involving an invalid or allegedly invalid election of FERS instead of CSRS. Those cases are Springer, Nielsen, and England. England and Nielsen are both non-precedential cases. Springer is the only precedential case. I think one of the reasons that we stand here today is because the administrative judges before the board do not have guidance as to what the standard is when it comes to evaluating whether a FERS election has been freely made. The board itself is the one that has been looking at these decisions, but in the absence of a quorum, the administrative judges don't have guidance as to how to interpret Springer, and so that's one of the reasons that we are here today. Just to touch briefly on England and Nielsen, which are the other two cases in which this court has looked at an allegedly invalid election of FERS over CRS, we recognize that in neither of those cases did the employee prevail. In both of those cases, the Federal Circuit found in non-precedential decisions that the employee was not entitled to the finding of an invalid election, but the Federal Circuit was clear to point out that the law does permit a showing of duress or fraud or even not a free choice in addition to mental incompetence that would permit a finding of an invalid election, and that is consistent with the precedent in Springer. And so given that there have been so few cases before this court on this issue, we respectfully request that this court reverse the board's decision and remand for consideration of whether or not there was a freely made choice in Mr. Baker's election of FERS in 1988. Thank you, Ms. Ruehl. We will save the remainder of your time for rebuttal. Mr. Yale. Thank you. Thank you, Your Honor, and may it please the court. I'd like to address a few points. First, there was a choice in this case. I mean, the form is in the record, Form 1555. There were two options. It said Appendix 126. I think I just heard – That's not the issue. We know there was a choice, but the issue was misinformation, isn't it? Well, the issue is misinformation, and that's what the board – the board held a hearing. It characterized the testimony that was presented as misinformation, which it was. And that sort of claim is barred by Richmond, but also the Coyne decision, which hasn't been mentioned here at all as well, as well as Springer. This isn't an involuntary retirement case. This is a separate set of – you know, separate precedent based upon a statute. And so we think that it's clear that those cases bar this. You know, I think in the briefing, there's been some mention that there could be a possible exception, one based upon maybe mental incompetence or theoretically something along the lines of duress. But this court has – I mean, this court has never found that that has been met. And part of that, it's such a high bar. Well, what do you think is the difference between misinformation of the sort that we have at issue here and duress? Where would you draw that? Well, I would think that duress would at minimum require some sort of a threat, which has never been the case here. I mean, frankly, Petitioner's own brief undermines, you know, any assertion that there has been duress here because the most – Is there a common law meaning of duress that you can quote? I mean, I – you know, just Black's Law Dictionary, I mean, this isn't in the briefing, but Black's Law Dictionary would say it's broadly a threat of harm to compel a person to do something against his will. But there's a threat component to that here, to that definition. And that's not – I mean, the cases that have broadly mentioned duress with regards to elections have not gone through sort of the elements that would apply here. I think we mentioned a non-presidential case. I believe it was Veal that mentioned sort of a threat that was, you know, sort of got a little bit into the elements. But again, you know, Petitioner's own brief is really – the logical inference from what happened was that this personal assistant at HUD provided incorrect advice. And it was likely correct for most new employees who were starting. It just so happened that for Petitioner it may have been incorrect. But it's misinformation. And that's the heart of the matter, and that's barred by Richmond and Coyen and Springer. And I'd also like to, you know, address a couple other points. To your question about Archer, I mean, that – Archer just doesn't apply here because that's a separate statute. There is a case, I believe, Nielsen, which, again, a non-presidential decision, but I think persuasively addressed why it doesn't apply. Because here we have an election. We don't have the agency making an erroneous placement at the initial stage of somebody infers or defers. The other point I would like to make, I think there was some assertions about Springer and that there needs to be more guidance. I mean, Springer was a 1990 decision. We haven't seen that the Board is struggling with duress claims. I mean, they're very – it's a very minor exception, if anything, here. And so we really think that the case law firmly bars the claim in this case and that there really was no error by the Board. Can I just check my understanding? Is your position that it's clear in this case that there was no duress and that is the ground on which you say Richmond, Springer, Coyen bar it? Or that even if there was something that meant duress, that those decisions would bar the attempt to undo – to revoke the election? Our position is that the Board held a hearing and looked at the evidence and found that what was presented was misinformation. And based upon that misinformation, the cases that we just discussed, Coyen and Springer and Richmond, bars it. Now, so we're not saying that those cases necessarily bar a duress claim, per se, or something. I mean, could there be a situation where this agency employee put a gun to somebody's head and said, you have to fill out this form or I'll fire this weapon. Would that be duress under the circumstances to invalidate an election? I don't know. Maybe that's the case. I don't think – Maybe. Maybe. Probably that's the case. But that's so far away from what we have here. So to answer your question, those cases bar what was presented, the evidence that was presented, which was a misinformation claim. But we also – I mean, we can look at the evidence that was presented, and it's not – it doesn't meet duress. I mean, just as sort of a general common law, you know, sort of general matter about what you would need to prove. And so even if, you know, the board – you know, when we talk about a remand or something, I mean, all of the evidence is in the record, and it just doesn't meet the elements of what would constitute duress under the common law. And if there's nothing further, we simply ask that you affirm the judgment of the board. Thank you, Mr. Yale. Ms. Wu has a couple minutes left. Thank you, Your Honor. I think the government's argument that there is no duress in this case illustrates why remand is required. The administrative judge did not consider that issue or discuss that issue. And, in fact, before the Merit Systems Protection Board, the government's argument, which is at APPX 95, was that the only instance in which – or the only example of an invalid election would be if an employee is found to be mentally incompetent. And so there was simply no argument to the administrative judge or even discussion, as illustrated on APPX 95 to 96, that duress or any other circumstance other than mental incompetence could lead to an invalid election. And I think the line-drawing exercise as to whether there's misinformation or a choice that wasn't freely made, such as duress, should be made by the administrative judge in the first instance and not be determined by this court. And just to confirm, where in the joint appendix is there a document that shows that your client argued duress in terms like that? Correct. So Mr. Baker was pro se below, and so the clearest testimony or evidence that there was duress is on APPX 260. There is a recross examination by Ms. Johnson, who is the OPM attorney, and she says, Mr. Baker, when you signed the form in 1988, at that time you felt like you were signing under duress. Answer, yes, I was. And then he is asked why he didn't write, I am signing under duress, and he says, I didn't know I had a right to put that. I signed it because I was told this is it. And so the testimony on duress was really elicited by the government attorney. But even as early as his initial claim to the agency, he consistently put, and this is not always true in every case, but is true in this case, that there was coercion by the government attorney. His claim has been consistent throughout that there was duress, and so the fact that the administrative judge did not address that. Do I understand also that notwithstanding that word or those words, coercion, duress, the facts that have been alleged and described are only that the HUD officer on the other side of the table said, you must do this? Correct, and I think you can see that also at APPX 258, where the judge said, are you saying that the agency personnel said initial A, and so you did that, and you didn't look at what A or B said, and he testifies, I did not look at B. I was just told this is the only retirement option available. I don't think those facts are disputed, and I think that our view is that this court should not determine in the first instance whether those facts rise to the level of duress, but allow the administrative judge to determine that on his own. And I think in our view, the administrative judge didn't even feel that he had found facts because he assumed the correctness of these factual assertions and nevertheless held as a matter of law that the claim was barred. Thank you. This will be taken on a submission.